THE PRESIDENT, ETC., OF YALE COLLEGE *v.* RUNKLE and others, Ex'rs.

(*Circuit Court, N. D. Illinois.* May 25, 1881.)

1. WILLS—BEQUESTS UPON CONDITION—CONDITION CONSTRUED.

Where a bequest was made upon condition that, within six months after the testator's decease, responsible citizens of a particular town and county should pledge a certain amount for the same object, and subscriptions aggregating more than the amount, but over 700 in number, were obtained,—many from men of small means, to whom a long time of payment had been given, many signed by other parties than the subscribers, and some upon condition,—*held,* that the condition had not been complied with.

*Mr. Mason, Mr. Miller,* and *Mr. Frost,* for plaintiffs.

*Lawrence, Campbell & Lawrence,* for defendants.

DRUMMOND, C. J. James Knox, of Knox county, in this state, died on the eighth day of October, 1876. By his will, dated January 27, 1872, he made various bequests to his relatives and friends, varying from $1,000 to $10,000 each. He also left an annuity to his sister of $1,200. He gave to the city of Knoxville, in Knox county, $2,000, in trust for specific purposes. To the Ewing Female University, in Knoxville, $10,000, upon condition that a like sum should be procured within one year, by subscriptions, for the purpose of enlarging the university building. To Hamilton and Yale Colleges, $15,000 each; but he "expressly provided that any donations which, in my life-time, I may make to either of the three institutions of learning above mentioned, shall be deducted from the legacy and bequest in favor of such institution." He added a codicil to his will on the second day of January, 1874, in which he stated that he had in the mean time given $10,000 each to the Ewing Female University, Hamilton College, and Yale College. By this codicil he gave to the Ewing Female University, or St. Mary's School, at Knoxville, the further sum of $10,000, upon certain conditions; among others, that an equal sum should be pledged to the same object by other responsible parties. By this codicil he devised to his executors all the rest and residue of his estate for the founding of an agricultural school, to be located near Knoxville; and he repeated the provision and condition in the original will as to payments made in his life-time to any

of these legatees. On the twelfth day of January, 1875, he added another codicil to his will, in which he declared that, in his opinion, the "donations" which had been made to Hamilton and Yale Colleges, and which were unpaid, could be better used in the cause of education in the Mississippi valley, and he therefore annulled the clauses in his will and codicil having reference to such bequests. By this codicil he also reduced the legacies, by $1,000 each, which had been given to certain of his relations, where they amounted to more than $1,000 each, for the purpose of increasing the bequest in favor of the agricultural school. In this way, he stated, he could make additions ($31,000) for the purpose of founding and building up that school. The bequest, together with the condition, is in the following terms:

"And now I give, bequeath, and devise to my last-named executors, the survivors or survivor of them, all the rest and residue of my estate, for the benefit of the school last referred to, but with the express condition and proviso that, before or within six months after my decease, responsible citizens of Knoxville or Knox county shall pledge at least $40,000 to the same object and purpose. Fearing that without such moral and material aid my earnest wish and purpose will be fruitless, I hereby revoke and declare null and void all I have heretofore written in regard to the contemplated school near Knoxville, unless the said sum of $40,000 shall be pledged and subscribed as above witten. If this be not done, then, and in lieu of the money I intended for said agricultural school, I give and bequeath to the trustees, and their successors, of Hamilton and Yale Colleges, $40,000 each, in addition to the $10,000 heretofore paid by me to each of said institutions."

The provision and condition contained in the original will and in the first codicil, as to payments made during his life-time, were not in terms repeated in the second codicil. All the rest and residue of his estate he gave to the trustees of Ewing Female University. By this codicil he repealed, annulled, and declared void all clauses and provisions of the will and first codicil inconsistent with this.

The bills filed in this case allege that this condition of the last codicil of the will has not been complied with as required by the testator, and therefore that the bequest to Yale and Hamilton Colleges has taken effect.

It is alleged in their answer, by the executors, that a subscription paper was prepared by which the subscribers promised to pay to the executors the sums set opposite their names, for the purpose of raising the required fund for carrying into effect the provisions of the will; and that subscriptions to the amount of $43,061 were made by responsible parties, which subscriptions were payable in four instal-

ments of one, two, three, and four years from January 1, 1877, and for which the subscribers agreed to give their respective notes, not bearing interest until after due, to the said executors, in trust for the said school, so soon as the amount required to secure said bequest of $40,000 had been pledged. The subscriptions were not to be held binding unless the requisite sum was pledged to secure the bequest of Mr. Knox for the school; that a corporation had been duly created under the law, which was willing to accept and had accepted this bequest made to the agricultural school. This corporation has been made a party by supplemental bill. The controversy, therefore, turns upon the fact, whether there was a subscription made by responsible citizens of Knoxville and Knox county, to the amount of $40,000, for the same object and purpose which the testator had in view, namely, for the founding and building up of an agricultural school near Knoxville, within the terms of the will.

I will state my opinion on some of the points made by counsel:

In order to give a proper construction to the second codicil of the will we must take into consideration the object of the testator. He intended to aid in the founding and building of an agricultural school near Knoxville; but in order to accomplish this he seemed to think that something more was necessary than that which he contributed himself. He obviously desired that the means of others, and those residing in the vicinity where the school was to be located, should be added to his own, as well as their influence in favor of the institution; for he says that without their moral and material aid he fears that what he can do or wish would be fruitless. But he certainly did not contemplate the payment of the whole sum of $40,000, which he required from citizens of Knoxville and Knox county, within six months after his decease, otherwise he would have so stated. He only declared that amount should be *pledged and subscribed* by responsible citizens of Knoxville and Knox county; and he certainly was fully aware of the condition, or what might be the condition, of his own estate at the time of his death; that it consisted, as is stated by the trustees in their answer, and as the fact appears, largely in real estate, scattered in different localities, and even in different states; that it would require possibly some years for his executors to realize on this property in such a way as to enable them to pay as well the other bequests which he had made as the particular one to the agricultural school near Knoxville, and therefore he did not deem it necessary that the money should be *paid* within the six months, but only pledged and subscribed by responsible citizens of the neigh-

borhood.    I do not think, therefore, the position taken by the counsel of the plaintiff, that this money should be paid within the six months after his death, can be sustained.    The work which was to be done in order to give effect to his bequest would obviously require considerable time.    Buildings were to be constructed, and other preliminary measures to be adopted, in order to accomplish his purpose. This, independent of the improbability of realizing so soon from his own estate the means necessary to pay the bequest, shows that it could not have been his intention to require so soon the payment of the money by the citizens who might subscribe.    It therefore seems to me that if *there was a pledge and subscription* of the sum of $40,-000 by responsible citizens of Knoxville and Knox county within six months after his decease, that was a compliance with the condition specified in the codicil.

There is great doubt about another objection, viz.: that these amounts were not payable in full until January, 1881, four years after the subscriptions were made.    But in view of the facts which appear in the answer, and which do not seem to be controverted, and from the nature of the case, that such time might possibly elapse before the whole amount was to be needed to carry into full effect the purpose of the testator, I cannot say that this condition alone of the subscriptions renders it inoperative, provided in other respects they were responsible pledges.    Neither does the fact that these subscriptions were made payable to the executors of the will.    It was not until some time after the death of the testator and the making of the subscriptions that a corporation was created to receive the proposed bequest, and therefore it was entirely competent, I think, for the parties interested in the object of the testator, and who are willing to contribute for that purpose, to provide for the payment of the subscriptions to trustees of their own selection; and the fact that they were the executors of Mr. Knox ought not to render their subscriptions inoperative.

There are various other objections made to the subscriptions, as that they did not bear interest until after the amounts were due and payable according to the terms of the subscriptions, and that they were made without any consideration.

I think if it were satisfactorily established that the $40,000 contemplated by the testator would certainly be available for the purpose named as soon as the funds from his own estate, or that they were so now, a court would be very much disinclined to regard with favor, formal and technical objections which might be made to the

subscriptions; for it would be the wish of a chancellor to give effect to the bequest made to the agricultural school, if it could be done consistently with the condition he has prescribed.

It remains to consider, therefore, the question whether or not, under the evidence, these subscriptions were made by responsible citizens of Knoxville and Knox county, in the sense of the testator as required by the will.

There were about 700 subscribers. There were six persons who subscribed $1,000 each; six who subscribed $500 each; two, $400 each; one, $300; seven, $250 each; four, $200 each; about 170, $50 each; and over 300 who subscribed $25 each. The whole amount subscribed was between $42,000 and $43,000. It is admitted by the defendants that about $1,000 of the subscriptions are by irresponsible parties; but it is claimed as to the remainder that the subscriptions are good and collectible.

This clause of the will must be construed so as to carry into effect the intent of the testator as there expressed, and we have to consider what was his meaning in the use of this language: "With the express condition and proviso that within six months after my decease responsible citizens of Knoxville and Knox county *shall pledge* at least $40,000 to the same object or purpose;" at the same time declaring that unless the amount was *pledged and subscribed* as above written, then instead of the money intended for an agricultural school, the legacies named should go to Hamilton and Yale Colleges respectively.

The parties who sought to carry into effect this condition of Mr. Knox's will appear to have circulated papers all through the county and obtained subscriptions from a large number of persons named, a great proportion of which were in small amounts, aggregating, nevertheless, more than $40,000. Mr. Knox, before his death, showed by his conduct that he had the establishment of this agricultural school very much at heart, but that he at the same time felt that it could not be successfully accomplished without the aid of others in addition to his own, and he sought to enlist in his purpose several of the influential and wealthy men of Knox county; in which object, however, he failed. It will be recollected that the second codicil declared that the money constituting the bequests to Yale and Hamilton Colleges, made in his original will, part of which had been paid by him during his life, could be better used in the cause of education in the Mississippi valley, and for that reason he annulled the clauses in the original will and in the first codicil having reference to

such bequests. And yet it appears that after he made the second codicil, on the twelfth of January, 1875, and before his death, he gave to each of the colleges, Hamilton and Yale, the sum of $10,000. These payments were made on the twenty-sixth day of January, 1876. And notwithstanding this he left his second codicil unchanged, and it so remained up to the time of his death, in October, 1876.

The question may be fairly asked whether, by obtaining the subscriptions in the way which has been mentioned, the purpose of Mr. Knox was accomplished as prescribed in his will. Application was not made to a few wealthy men of Knox county, as perhaps it might be claimed was contemplated by Mr. Knox, and the pledge and subscriptions made on their part to meet the condition of the will, but subscriptions amounting in number to more than 700 were obtained, many of these from men of small means; and it is clear from the evidence that much canvassing became necessary in order to obtain these subscriptions, and long time of payment had to be given. Many were not made by the subscribers themselves; that is to say, they did not sign their own names, by which they agreed to pay the respective amounts, but they were signed by other parties, as it is claimed, at their request and with their consent. Some subscriptions were made upon condition, and therefore were not absolute in their character, even within the terms of the subscription papers. These circumstances would undoubtedly give rise to numerous controversies if payment of these subscriptions were sought to be enforced.

While several of the witnesses state in a general way that the subscribers were responsible, it is impossible for a court, in the light of the evidence, to disregard the general character of subscriptions of this kind, consisting of so many persons and of so many varying amounts. Undoubtedly, a large proportion of these subscriptions were by responsible parties; but, judging from the testimony and the experience which may be presumed to be part of the knowledge of every one, and so of the court, it may be asserted with great confidence that it would not be possible at any time to collect from these subscribers anything near the nominal amount of those subscriptions. The failure of some to pay, and the expense of collecting these subscriptions, would prevent their reaching the amount which he designated in his will.

The subscription papers have stood, as is admitted, up to this time in the same position that they were when they were turned over to

the executors. No notes have been given, no money has been paid. It is true that these bills have been pending for the purpose of determining whether the condition of the will has been complied with, and that, perhaps, may be one reason why nothing has been done to make available any portion of the amount of these subscriptions. But all experience shows that even the delay which was given for the realization of the fund sought to be raised by the subscriptions, jeoparded the ultimate payment of a large part of them. So that it must be considered that there was not, within the meaning and understanding of the testator, pledged and subscribed the sum of $40,-000 to meet the bequest which he made for the benefit of the agricultural school.

Another question arises on the second codicil of the will, and that is whether there was, within the intention of the testator, to be paid to Hamilton and Yale Colleges the full sum of $40,000 each, or whether there is to be deducted from that bequest to each the payment which had been made by him between the date of the codicil and the time of his death. This subject was not discussed on the argument, as the Ewing Female University or St. Mary's School, the residuary legatee under the second codicil, is not a party; but as the counsel wish it, I will state my views on the question. By this second codicil he repealed, annulled, and declared void all clauses and provisions in his will and first codicil inconsistent with the second codicil, but he confirmed and reaffirmed everything therein written not inconsistent with the second codicil. After having made a bequest by his original will of $15,000 to Hamilton College, and the same sum to Yale College, he declared that any donations which he might make to them during his life-time should be deducted from the bequest in favor of such institutions. And, as will be recollected, he made a payment, between the date of his original will and the date of the first codicil, of $10,000 to each of these colleges, as well as $10,000 to each of them after the date of the second codicil. In his first codicil he says: "Having paid to the three literary institutions mentioned in the foregoing will $10,000 each, there remains due only to Yale and Hamilton Colleges the same sum to be paid each after my decease." The meaning of which necessarily was that the sum of $10,000 was to be paid to Yale and Hamilton Colleges together; $5,000 to each, and not $10,000 to each. He is equally incorrect in the use of language in his second codicil, where he recites "that the donation of $10,000, as yet unpaid to Hamilton and Yale Colleges, each, can be better used in the cause of education in the Mississippi

valley." Although he died with the second codicil unchanged, as he wrote it in January, 1875, did he intend that the $20,000 which he had paid to those two institutions between the date of that codicil and the time of his death should be deducted from the $40,000 which he had given to each, or that the bequest should remain as though he had not paid the $10,000 to each in January, 1876?

It seems to me, taking the general scope and purpose of the original will, as well as the first and second codicil, together, that the language of the original will, by which any donation made during his life-time was to be deducted from the legacy and bequest in favor of such institution, ought to be considered as applicable to the bequest in the second codicil to Hamilton and Yale Colleges, and therefore a deduction should be made of the amount which he had paid to each between the date of the second codicil and the time of his death.